**Abideen A. OLADIPUPO**

v.

**John AUSTIN, et al.**

**George Okechukwu, et al.,**

v.

**Janet Reno, et al.**

**Nos. Civ.A. 97–0931, Civ.A. 98–2065.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

April 24, 2000.

---

Abideen A. Oladipupo, Shomolu Lagos Nigeria, plaintiff pro se.

Baldwin Neil Foster, DeRidder, LA, consolidated plaintiff pro se.

Balram Ramsukh, Miami, FL, consolidated plaintiff pro se.

Steve Arthur, DeRidder, LA, consolidated plaintiff pro se.

Juan Carlos Brinis Fernandez, Bastrop, TX, consolidated plaintiff pro se.

Henry Kobnar Davies, Pine Prairie, LA, consolidated plaintiff pro se.

Tara B. Cochran, Office of Rodney M. Rabalais, Marksville, LA, for John Austin, Kenneth Ginzt, A.J. Thibodeaux, Kelly Ray Jones, Jimmy Dauzat, Eric Jacobs, Joseph Meche, Sgt. Blackman, Kerry Sayer, defendants.

Thomas B. Thompson, U.S. Atty's Office, for Lafayette, LA, for John Caplinger, Lynne Underdown, defendants.

Katherine W Vincent, U.S. Attorney's Office, Lafayette, LA, for Janet Reno, Board of Directors, Dist. Director of I.N.S., defendants.

## RULING

LITTLE, Chief Judge.

Before the court is the report and recommendation of the magistrate (Doc. 225), recommending that we DENY in part and GRANT in part the motion for summary judgment filed by defendants Bill Belt ("Belt"), Sheriff of Avoyelles Parish, and A.J. Thibodeaux ("Thibodeaux"), Warden of Avoyelles Parish Jail ("APJ"). The magistrate recommends that Belt's and Thibodeaux's motion for summary judgment should be granted as to plaintiff Baldwin Neil Foster's claims for lack of access to an ice machine and hot water for tea, and inadequate access to the courts. The magistrate recommends denying their motion, however, as to Foster's claims based on overcrowding, lack of adequate exercise, inadequate access to phones and excessive phone rates, lack of sanitation, inadequate meals, and clothing, lack of emergency exits, and the practice of placing detainees in the same unit as convicted inmates. After reviewing the entire record, including Belt's and Thibodeux's objections to the magistrate's report and recommendation we adopt the magistrate's recommendation in part and add our own analysis.

### I. Factual Background

Baldwin Neil Foster ("Foster"), the only remaining plaintiff in action 98–2065, which was consolidated with 97–0931, was transferred from Oakdale Detention Center to Avoyelles Parish Jail (APJ) on 20 May 1998. Foster, and several other INS detainees awaiting removal from the United States, filed this action on 23 October 1998 challenging the conditions of confinement at APJ. Specifically, Foster brings a claim under the due process and equal protection clauses of the Fourteenth Amendment, and the First and Sixth Amendments. Foster bases his claims on the conditions of the INS detainment unit at APJ, including the lack of access to an ice machine or hot water for tea, inadequate meals and recreational exercise, inadequate bedding, limited access to the prison law library, inadequate sleeping quarters, excessive phone rates, and the fact that INS detainees must share the same segregation unit as convicted prisoners. Foster requests relief in the form of monetary damages and injunctive and declaratory relief.[1] On 3 August 1999, Foster filed a motion for summary judgment based on the defendants' failure to answer his lawsuit. Belt and Thibodeaux brought their own motion for summary judgment on 12 August 1999, arguing that Foster's complaint failed to state any constitutional deprivation, and asserting the defense of qualified immunity.

### II. Analysis

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *See id.* at 255, 106 S.Ct. at 2513. If the movant produces evidence tending to show that

---

1. Foster has been transferred from Avoyelles Parish Jail. Accordingly, his claims for injunctive and declaratory relief are moot. *See Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir.1991); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988). His only remaining claims against defendants are for monetary damages.

there is no genuine issue of material fact, the non-movant must come forward, after adequate time for discovery, with "specific facts" sufficient to establish the existence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A plaintiff may not withstand summary judgment, however, by relying on unsupported, conclusory allegations. *See, e.g., Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993) (summary judgment is appropriate if "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

### A. Section 1983 Standard

■ Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). To make out any claim under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law and, (2) that this conduct deprived the plaintiff of rights secured by the Constitution or federal statutes. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Evans v. City of Marlin,* 986 F.2d 104, 107 (5th Cir.1993). Neither party disputes that defendants were acting under state law. Rather, the parties disagree as to whether Foster has stated a violation of his constitutional rights.

■ Pre-trial detainees possess a clearly established constitutional right to be free from punishment. *See Bell v. Wolfish,* 441 U.S. 520, 534–37, 99 S.Ct. 1861, 1871–73, 60 L.Ed.2d 447 (1979). The Supreme Court has held that a pretrial detainee's claims of unconstitutional conditions of confinement[2] are analyzed under the Fourteenth Amendment's guarantee of due process of law, as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to sentenced inmates. *See id.,* 441 U.S. at 535 n. 16, 99 at 1872 n. 16; *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir.1996).

### 1. *Applicable Standards*

■ In the context of section 1983 claims by pretrial detainees,[3] the Fifth Circuit has distinguished between cases challenging specific acts and omissions and those alleging constitutional deprivations by virtue of the general conditions of confinement. *See Hare,* 74 F.3d at 644. A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *See id.* In condition cases, the harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997). The Fifth Circuit has concluded that where a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare,* 74 F.3d at 640 (citing *Bell* 441 U.S. at 538–39, 99 S.Ct. at 1873–74); *see also Scott,* 114 F.3d at 53 (citing *Hare* ).

---

**2.** "A 'condition of confinement' case is a '[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement.' " *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)).

**3.** When addressing the rights of INS detainees, the Fifth Circuit instructs that the court should look to jurisprudence establishing the constitutional rights of pretrial detainees. *See Ortega v. Rowe,* 796 F.2d 765, 767 (5th Cir. 1986).

■ In contrast to a conditions of confinement case, where a plaintiff's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir.1999); *Hare,* 74 F.3d at 645. Where the plaintiff is suing an individual defendant, as opposed to a municipality, for a specific act or omission the plaintiff " 'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights.' " *Olabisiomotosho,* 185 F.3d at 526 (citing *Flores v. County of Hardeman,* 124 F.3d 736, 738–39 (5th Cir.1997)). An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare,* 74 F.3d at 650.[4] Although the Fifth Circuit has carefully distinguished the conditions of confinement cases from those cases arising from a specific act or omission, it has also noted that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases." *Scott,* 114 F.3d at 54 (citing *Hare,* 74 F.3d at 643).

In this case, Foster is clearly challenging the general conditions of confinement at APJ. We must therefore proceed to determine whether Foster has stated a claim against Belt and Thibodeux sufficient to show that the conditions of confinement at APJ are not reasonably related to a legitimate nonpunitive governmental objective.

### 2. Qualified Immunity

■ Belt and Thibodeaux contend that they are protected from liability on the basis of qualified immunity. Qualified immunity protects officials in the course of performance of their discretionary duties unless their conduct violates a "clearly established [federal] statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Evans v. Ball,* 168 F.3d 856 (5th Cir.1999); *Sorenson v. Ferrie,* 134 F.3d 325, 327 (5th Cir.1998). To assess whether defendants are entitled to immunity, we must first determine whether a plaintiff has alleged the violation of a clearly established constitutional right. *See Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991). If we find a right to be clearly established, we must then examine the objective legal reasonableness of the official's conduct under the circumstances, "in light of clearly established law and the information the [ ] officers possessed." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).[5]

### B. Individual Capacity Suit

■ A section 1983 action may be brought against a person in his individual

---

4. *See also Sibley v. Lemaire,* 184 F.3d 481, 489 (5th Cir.1999) ("In *Hare* ... we adopted the same deliberate indifference standard for pretrial detainees as the one articulated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), for convicted prisoners. 'It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.' ").

5. The qualified immunity defense involves a shifting burden of proof. The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *See Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1310 (5th Cir. 1987); *Whatley v. Philo,* 817 F.2d 19, 20 (5th Cir.1987);. The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; that burden is placed on the plaintiff. *See Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir.1992).

capacity, a person in his official capacity, or against a governmental entity like the parish or county. *See Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In a section 1983 action, a supervisor cannot be held liable under the doctrine of respondeat superior. *See Monell,* 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58; *Doe v. Taylor Independent School Dist.,* 15 F.3d 443, 452 (5th Cir. 1994). In order to be liable under section 1983, an individual defendant must have personally participated in the alleged constitutional deprivation. *See Murphy v. Kellar,* 950 F.2d 290, 292 & n. 7; *Thompson v. Steele,* 709 F.2d 381, 382–83 (5th Cir.1983). One threshold question that must be addressed in assessing whether Foster has stated a claim against Belt and Thibodeux, therefore, is whether they may be said to have had any personal involvement in the conditions of confinement at APJ.

▮ In their motion for summary judgment, Belt and Thibodeux argue that they were not personally responsible for the alleged constitutional deprivations that occurred at APJ. In their motion for summary judgment defendants claim that Belt is entitled to be dismissed from this lawsuit because the doctrine of respondeat superior does not apply to actions brought pursuant to section 1983. In his complaint, Foster contends that Thibodeaux and Belt failed to respond to his administrative complaints. Foster also attached to his pleadings copies of letters sent to Thibodeaux and Belt, and signed by twenty-one inmates at APJ, which complains of overcrowding, lack of toilets, lack of access to the courts, inadequate recreation, inadequate food, lack of name tags, excessive phone billing, inadequate clothing, incarceration of detainees with convicted inmates, and inadequate emergency exits. *See* Pl.'s Amended Compl., Exhibits. If Belt and Thibodeaux knew of the conditions endured by Foster and failed to remedy the situation, they can be said to be personally involved in creating and sustaining the conditions at APJ. The letters sent by Foster to Thibodeaux and Belt indicate they were in fact aware of the precise conditions endured by INS detainees at APJ. Genuine issues of fact regarding the defendants' personal involvement remain.

### 1. *Equal Protection Claim*

▮ Foster contends that he and the other INS detainees at APJ were deprived of their equal protection rights because the INS detainees at Oakdale Federal Detention Center receive better treatment. We easily dispense with plaintiff's equal protection argument. In essence, the Equal Protection Clause prohibits the disparate treatment of similarly situated individuals. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Contrary to Foster's assumption, however, an inmate or detainee has no constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

▮ In the instant matter, the plaintiff does not contend that he was treated differently than other APJ INS detainees. Rather, the gravamen of Foster's equal protection claim is that he and INS detainees held at APJ enjoy fewer privileges than those enjoyed by prisoners detained at Oakdale Federal Detention Center. As a matter of law, plaintiff has failed to allege that defendants created two or more classifications of similarly situated individuals that were treated differently. *See, e.g. Rivera v. Senkowski,* 62 F.3d 80 (2nd Cir.1995) (no legally cognizable equal protection claim against officials at a New York state prison based on fact that inmates allegedly were provided fewer privileges than prisoners housed in other state-operated facilities, where named defendants lacked any authority over other state

prisons). Foster's equal protection claim is therefore dismissed.

## 2. *Due Process Claims*

██ Defendants argue that Foster is not entitled to prevail on his claims because he has not alleged any damages. We are not persuaded by this argument. Where a section 1983 plaintiff proves a violation of his constitutional rights, he may recover nominal as well as punitive damages even if the violation of his civil rights causes no actual injury. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Green v. McKaskle*, 788 F.2d 1116, 1124 (5th Cir.1986); *Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir.1985). We therefore reject defendants arguments that they are entitled to summary judgment because Foster has alleged no injury or damages.

██ The magistrate analyzed Foster's claims under the Eighth Amendment.[6] Clearly, if a situation violates the Eighth Amendment as cruel and unusual punishment, it would constitute punishment in violation of Foster's due process rights. The fact that the magistrate applied the Eighth Amendment to the conditions of confinement at APJ is therefore not fatal to the validity of his analysis. After a careful review of the record, we adopt the magistrate's conclusion that Foster can withstand summary judgment on Foster's claims based on overcrowding, inadequate meals, lack of access to phone calls and excessive phone rates, and inadequate exercise and clothing.[7] The magistrate's report does not address Belt's and Thibodeux's argument that they are entitled to summary judgment as to Foster's claims based on inadequate medical care at APJ, the lack of emergency exits in the detainment unit, and practice of housing INS detainees with convicted inmates. Accordingly, we will now discuss those issues.

### (a) *Inadequate Medical Care*

██ Foster makes a general claim that the medical care at APJ is inadequate because it takes from two weeks to one month from the request for medical care to see a doctor. Pretrial detainees have a due process right to reasonable medical care. *See Sibley v. Lemaire*, 184 F.3d 481, 488–89 (5th Cir.1999) (discussing the rights of a pretrial detainee and concluding that the prison had the duty to provide reasonable medical care); *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D.La. 1998) ("Violation of an inmate's liberty interest in bodily integrity by denying him basic human needs such as reasonable medical care, personal safety, and sanitation can amount to punishment."). As defendants point out, however, Foster has not stated that he has been deprived of reasonable medical care. Rather, he

---

**6.** In their opposition to the magistrate's report and recommendation, the defendants likewise rely on the Eighth Amendment to argue that Foster has not shown "deliberate indifference." As stated previously, the standard applicable to pretrial detainees claims based on conditions of confinement is not deliberate indifference, but instead whether the conditions are reasonably related to a legitimate government interest. *See Hare*, 74 F.3d at 644–45. In such a case, we assume that the that the State intended to cause the pretrial detainee's alleged constitutional deprivation. *See id.*

**7.** The magistrate does not directly address Foster's allegation of lack of sanitation at APJ, but instead concludes that the defendants fail to address this issue. In fact, the defendants'

motion for summary judgment does discuss this issue. Belt and Thibodeaux contend that Foster's allegation of unsanitary conditions must fail because it does not rise to the level of a constitutional deprivation nor state that Foster was damages. We disagree. "Violation of an inmate's liberty interest in bodily integrity by denying him basic human needs such as reasonable medical care, personal safety, and sanitation can amount to punishment." *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1186 (5th Cir.1986). Foster's sworn pleadings state facts that suggest that the detainment unit had serious sewage problems. This is sufficient to create a genuine issue of material fact.

makes general, conclusory allegations concerning the medical care at APJ. Foster's vague assertions are not sufficient to establish violation of a clearly established constitutional right. We therefore dismiss plaintiff's due process claim for inadequate medical care.

### (b) *Condition of Housing and Emergency Exits*

■ In his complaint, Foster contends that there is only one exit, and no emergency exit, for the entire segregation area housing the INS detainees. According to Belt and Thibodeaux, the detainment area in which Foster was housed complies with the 1994 Consent Decree specifying the required conditions at APJ and met with the approval of the Louisiana Fire Marshall and Health Officer. In his opposition to the defendants' motion for summary judgment, Foster alleges that the Fire Marshall was not allowed to view the detention area in which the INS detainees are housed and therefore did not witness the conditions in the unit. Foster has attached affidavits sworn by other INS detainees to his opposition to defendants' motion for summary judgment that corroborates his statements regarding the exit door situation.

There is no question that fire safety is a legitimate concern under the Eighth Amendment. *See, e.g., Santana v. Collazo,* 714 F.2d 1172, 1183 (1st Cir.1983); *Ruiz v. Estelle,* 679 F.2d 1115, 1152–53 (5th Cir. 1982). Even if the jail is required to comply with the Consent Decree and state codes, the information before the court presents a genuine issue of material fact as to whether the unit actually meets applicable standards. The situation presented by the housing of INS detainees in a unit with only one exit, if true, violates Foster's constitutional right to be confined in a reasonably safe place. As stated previously, INS detainees are entitled to be free from punishment. Housing detainees in a room in which the safety of its occupants is seriously in question in the event of fire certainly could rise to the level of punishment in violation of the Fourteenth Amendment. The factual dispute regarding the access to exits and emergency exits precludes summary judgment on this issue.

### (c) *Housing of Detainees with Convicted Inmates*

■ Foster protests the fact that the INS detainees are being placed in a unit with convicted prisoners. It is possible that a prison policy that allows housing of pretrial detainees with dangerous inmates may rise to the level of a constitutional violation. *See Morales Feliciano v. Hernandez Colon,* 697 F.Supp. 37, 45–46 (D.P.R.1988) (where conditions of jail intolerable, commingling of pretrial detainees with convicted inmates constituted punishment). *But see Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir.1988) (lodging pretrial detainees with convicted inmates not unconstitutional). Here, Foster gives us no indication that the alleged practice of housing detainees with convicted inmates subjected him to injury or any risk of harm. Without such an allegation, we must grant defendants motion for summary judgment as to this issue.

### Objective Legal Reasonableness

The final question that we must address is whether Belt and Thibodeaux are entitled to qualified immunity, that is, whether their actions can be considered "objectively reasonable" in light of clearly established law. *See Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir.1998). Foster's right to be free from punishment as a pretrial detainee is well established. The magistrate's report, as supplemented here, has shown that Foster's clearly established due process rights have been implicated on specified issues. Because there exists a factual dispute as to whether Foster has shown a violation of his constitutional rights, we cannot, as yet, determine as a matter of law whether defendants' acts were reasonable. Defendants do not even attempt to argue that they acted rea-

sonably. Rather, they focus their arguments on disputing that any constitutional violation ever occurred. As such, we conclude that genuine issues of material fact remain, precluding summary judgment against Belt and Thibodeaux in their individual capacities on the issues of inadequate meals, exercise, and clothing overcrowding, unsanitary conditions, lack of access to telephones and excessive phone rates, and lack of emergency exits.

### C. Official Capacity Suit

██ Foster purports to sue defendants in both their official and individual capacities. Sheriff Belt may be sued in his official capacity because under Louisiana law, administration of a parish jail, including the obligations to provide medical care for, feed and clothe the prisoners, is the province of the Sheriff of the parish. *See* La.Rev.Stat.Ann. § 15:704 (providing that Sheriff is the "keeper" of the parish jail). Sheriffs in Louisiana are considered final policy makers with respect to management of the jail. *See id.* ("Each sheriff shall be the keeper of the public jail of his parish...."); *Jones,* 4 F.Supp.2d at 613; *see also Langley v. City of Monroe,* 582 So.2d 367, 368 (La.App.2d Cir.1991) (explaining that Sheriff is the proper defendant in an official capacity suit challenging conditions at parish prison).

██ While jail officials in their individual capacities may be held liable for acts or omissions causing constitutional deprivations if they acted with subjective deliberate indifference, more is required to establish liability on the part of the governmental entity that employs these officials. *See Eugene v. Altef Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995). Under section 1983, where a plaintiff challenges the general conditions of confinement, we assume, by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation. *See Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir.1997); *Scott,* 114

F.3d at 53. The inquiry becomes whether the conditions are reasonably related to a legitimate government purpose. *See Bell,* 441 U.S. at 539, 99 S.Ct. at 1874,

██ Since we are to assume that the Sheriff intended the conditions at APJ, our sole inquiry is whether the conditions are reasonably related to a legitimate government objective. The defendants have not proffered any legitimate government objective that justifies the conditions at APJ. The court finds that Foster has raised genuine issues of material fact as to whether the Sheriff's policy of housing the INS detainees in an overcrowded, unsanitary unit lacking adequate opportunity for recreation, adequate meals and clothing, and emergency exits was reasonably related to a legitimate governmental purpose.

As stated above, the Sheriff alone has the responsibility to maintain his parish jail. Neither the Warden nor any of the other defendants are under any such a duty. Foster's suit against the remaining individual defendants in their official capacity are therefore DISMISSED. The official capacity suit against Thibodeaux is therefore DISMISSED.

### D. Foster's Motion for Summary Judgment

Prior to the filing of Belt's and Thibodeaux's motion for summary judgment, Foster submitted his own motion for summary judgment on 3 August 1999 contending that he was entitled to judgment as a matter of law because the defendants had not yet answered his complaint. Belt and Thibodeaux filed their motion for summary judgment on 12 August 1999. In their motion for summary judgment, the defendants create genuine issues of material fact as to whether any constitutional violations occurred. *See* discussion *supra.* We therefore DENY Foster's motion for summary judgment.

### III. *Conclusion*

For the reasons stated here and set forth in the magistrates's report and rec-

ommendation, we GRANT Belt's and Thibodeux's motion for summary judgment as to Foster's equal protection claim and his due process claims based on lack of access to hot water, ice, lack of access to the courts, inadequate medical care, and the practice of housing INS detainees with convicted inmates. We DENY Belt's and Thibodeaux's motion for summary judgment, however, on Foster's claims for inadequate meals, exercise, and clothing, overcrowding, lack of access to telephones and excessive phone rates, inadequate sanitation, and unsafe conditions created by the lack of adequate exits. These claims remain before the court. Finally, Foster's own motion for summary judgment is DENIED.